STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. KENNETH G. ROLESON, DEFENDANT-APPELLANT.

Argued December 21, 1953—Decided February 1, 1954.

404

Mr. *Louis C. Friedman* argued the cause for the appellant.

Mr. *J. Bernard Saltzman,* Assistant County Prosecutor, argued the cause for the State (*Mr. Donald G. Collester,* County Prosecutor, of counsel).

The opinion of the court was delivered by
HEHER, J. The contention here is that the defendant Roleson is confined in the State Prison under cumulative

sentences void for want of compliance with *R. S.* 1937, 2:192-4, now *N. J. S.* 2A:164-17, as amended by *L.* 1953, *c.* 276, providing that all sentences to the State Prison "be for a maximum and minimum term, except sentences for life," the maximum term not to be "in excess of the maximum term prescribed by law for the offense for which the offender was convicted," and the minimum term to be "not * * * less than one year," saving the power to suspend sentence and place the offender on probation as provided in *R. S.* 1937, 2:199-1, now *N. J. S.* 2A:168-1.

On April 14, 1950 the defendant prisoner pleaded *nolo contendere* to seven indictments severally charging the uttering with fraudulent intent of a worthless check in violation of *R. S.* 1937, 2:134-17, now *N. J. S.* 2A:111-15, and was thereupon sentenced to imprisonment in the State Prison at hard labor "for the maximum term of one year and the minimum term of one year," the sentences "to run consecutively." There were like sentences of imprisonment upon some 16 additional indictments for the same offense, to "run concurrently with sentence imposed" on the last of the first-stated group of indictments. These sentences were imposed after anti-social behavior constituting a violation of the conditions of probation attending the suspension of earlier sentences of imprisonment for the same offenses.

On *habeas corpus,* first in the Mercer County Court and later on in the Appellate Division on appeal, it was held that under *State v. Moore,* 21 *N. J. Super.* 419 (*App. Div.* 1952), an "illegal sentence" is not reviewable by writ of *habeas corpus,* but is correctible by resentence under *Rule* 2:7-13, now *R. R.* 3:7-13. *State v. Roleson,* 22 *N. J. Super.* 40 (*App. Div.* 1952).

A subsequent application for resentence addressed to the Passaic County Court under the cited rule was denied. Judge MacLeod affirmed that the purpose was to confine the defendant in the State Prison "rather than in one of the reformatories where an indeterminate sentence might be utilized," and this "could only be accomplished by imposing sentences wherein the minimum and maximum are identical,"

and such was permissible under *R. S.* 1937, 2:192–4, *supra.*
The Appellate Division sustained this determination, hold-
ing that "the case presents an exception to the general rule
of *State v. Moore,*" cited *supra.* *State v. Roleson,* 25 *N. J.
Super.* 461 (*App. Div.* 1953).

It is the judicial province to resolve accusations of crime;
the Legislature determines the punitive consequences of a
conviction of crime, the mode and method of penal adminis-
tration, and the reformative techniques and procedures to
prepare the prisoner for a return to free community life.
Parole and the indeterminate or indefinite sentence are
coordinate measures for the maintenance of prison morale
and discipline and ultimately, and primarily, apart from a
degree of punishment for the past transgression, the rehabili-
tation and social adjustment and integration of the contrite
and potentially useful prisoner. All offenders are not
incorrigible; and these procedures are constituents of a
social regenerative process that would enlighten and inspire
and extend the helping hand to those who are not irre-
deemable. The design is, by these redemptive means, and
in smaller measure the commutation for earned good-con-
duct time and for work performance, to supplant despair
by hope and recalcitrance and rebellion by a conforming
mood and disposition of mind, and eventually to develop
the better instincts and qualities of the fallen prisoner and
fit him for the acceptance of social responsibilities, in the
common and individual interest.

The minimum-maximum concept written in *R. S.* 1937,
2:192–4 constitutes an imperative socio-economic policy
rather than an absolute discretionary procedure subject to
whim and caprice. Making the minimum almost identical
with the maximum term is an abuse of authority that had its
genesis in the early opposition of judges to the principle of
the indeterminate sentence. For the philosophy of the
indefinite sentence, see *Sutherland's Principles of Crimi-
nology,* 515 *et seq.* (1939). Only by uniformity and con-
sistency of policy may there be avoided the unequal sentences
which make for resentment subversive of the corrective

process. *Vide, Encyclopedia of Criminology, Branham-Kutash,* 423 (1949).

The inquiry is whether this case is comprehended in the statutory class.

The uttering of a worthless check is a misdemeanor punishable by a fine not exceeding $1,000, or imprisonment not exceeding one year, or both. *R. S.* 1937, 2:134–17, now *N. J. S.* 2A:111–15. But sentences to imprisonment "for any term of one year or longer" shall be served in the State Prison, except that in any county in which a penitentiary is located, a person sentenced to hard labor and imprisonment for a term of not less than one year and not exceeding 18 months, shall be imprisoned in the county penitentiary instead of the State Prison, unless the convicted person shall have previously served a term in the State Prison, in which case, in the court's discretion, the imprisonment may be in the State Prison, or, again in the court's discretion, in the county workhouse, if there be such, instead of the State Prison or the county penitentiary. But sentences for less than a year shall be served in the "common jail of the county where the conviction was had, or in the county workhouse or penitentiary, in the discretion of the court * * *." *R. S.* 1937, 2:192–3, as amended by *L.* 1945, c. 153, now *N. J. S.* 2A:164–15. At the time of the imposition of these sentences, Passaic County did not have, nor does it now have, a penitentiary or workhouse; minor offenders are confined in the county jail.

██ There can be no doubt that the minimum-maximum provision, *R. S.* 1937, 2:192–4, was not intended to apply to a single conviction for uttering a spurious check. The punishment prescribed renders that procedure inapposite, for by statutory directions *in pari materia* imprisonment for this offense is limited to one year, and sentences for one year or more shall be served in the State Prison or the county workhouse or penitentiary, depending on the circumstances as stated *supra*, and for less than a year in the common jail of the county, or in its workhouse or penitentiary. And the minimum sentence cannot be less than

one year. Is the minimum-maximum statutory policy applicable where, as here, there are cumulative sentences of one year upon seven convictions for separate and distinct offenses, or seven years in all? We are clear that it is not, for want of an explicit legislative direction to that end.

 The convictions involved individual offenses of the same character, punishable separately and by cumulative rather than by concurrent terms of imprisonment where that course was deemed by the trial judge to be in keeping with the requirements of justice. The distinction is between separate and distinct criminal acts and a single offense continuous in nature. *State v. Witte*, 13 *N. J.* 598 (1953) ; *Blockburger v. United States*, 284 *U. S.* 299, 52 *S. Ct.* 180, 76 *L. Ed.* 306 (1932) ; *United States v. Daugherty*, 269 *U. S.* 360, 46 *S. Ct.* 156, 70 *L. Ed.* 309 (1926) ; *Ex Parte Snow*, 120 *U. S.* 274, 7 *S. Ct.* 556, 30 *L. Ed.* 658 (1887). Compare *Badders v. United States*, 240 *U. S.* 391, 36 *S. Ct.* 367, 60 *L. Ed.* 706 (1916) ; *Graham v. West Virginia*, 224 *U. S.* 616, 32 *S. Ct.* 583, 56 *L. Ed.* 917 (1912). Absent an enabling statute, there could not be a general sentence for all of such offenses, treated as a unitary whole, but rather a separate sentence on each, the sentences to run consecutively, if such be considered the true course of justice. This is elementary law. *People v. Elliott*, 272 *Ill.* 592, 112 *N. E.* 300 (*Sup. Ct.* 1916).

██ ██ It will not be amiss to observe here that if there be several counts in an indictment for offenses different, but not "positively repugnant," the practice is to sentence on the count charging the offense of the highest grade; and where there is a good count and a bad count, and a general verdict of guilty, a valid judgment can be entered on the verdict, which is presumed to have been entered on the good count. *State v. Dugan*, 65 *N. J. L.* 65 (*Sup. Ct.* 1900), affirmed *Id.* 684 (*E. & A.* 1901) ; *State v. Friedman*, 98 *N. J. L.* 577 (*E. & A.* 1923). A general conviction is sustainable if there be a single good count in the indictment. *State v. Huggins*, 84 *N. J. L.* 254 (*E. & A.* 1913) ; *State v. Dunlap*, 103 *N. J. L.* 209 (*Sup. Ct.* 1927). And, although

the question has evoked controversy, it has been held that an indictment may, by separate counts, charge separate and distinct offenses arising out of the one criminal transaction, each carrying its own penalty. *State v. Byra*, 128 *N. J. L.* 429 (*Sup. Ct.* 1942), affirmed 129 *N. J. L.* 384 (*E. & A.* 1943).

We have not been cited to any statutory authority for administrative treatment of such sentences as one for the purpose of setting a minimum period for parole consideration; and we are not aware of any provision to that end. *E. g. L.* 1953, *c.* 277, *N. J. S. A.* 30:4-123.10; *L.* 1948, *c.* 84, *N. J. S. A.* 30:4-123.35; *L.* 1953, *c.* 29, *N. J. S. A.* 30:8-28, in part to provide for deficiencies in practice, but none apropos here. It may be that the Legislature has overlooked cumulative sentences of this particular class in relation to the basic minimum-maximum sentence policy. There would seem to be no discernible ground for excluding from this beneficent policy multiple successive sentences for offenses having a statutory maximum of one year. But that is a question for the Legislature. Supplying a *casus omissus* is not within the judicial province.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice WACHENFELD—1.