477 A.2d 791

**Tony Lava JENKINS**

v.

**STATE of Maryland.**

**No. 1424, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

July 13, 1984.

614

Julia A. Doyle, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender, on the brief, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., and Warren F. Sengstack, State's Atty. for Calvert County, on the brief, for appellee.

Submitted before LOWE,* WILNER and BISHOP, JJ.

WILNER, Judge.

This appeal requires us to consider the relationship between the crimes of assault with intent to murder (Md.Code Ann. art. 27, § 12) and assault with intent to maim, disfig-

---

* Lowe, J. participated in the discussion of the case and in the conferencing of the decision but died prior to the filing of this opinion.

ure, or disable (art. 27, § 386). We shall conclude, as a general rule, that, when arising from a single act, these crimes are inconsistent. A person cannot, in other words, based on a single act that might serve to establish either crime, be convicted of and sentenced for both.

On the afternoon of May 13, 1983, Alfred Claggett and a friend Mike Sharps drove to a store in Sunderland, Maryland. Claggett got out of the car to attend to some business; when he returned a short time later, he found appellant leaning on the car peaceably talking to Sharps, who was then in the driver's seat. Claggett tapped appellant on the shoulder and told him to "lean off" the car. He then proceeded toward the store.

Appellant followed Claggett, mumbling something unintelligible to Claggett. At some point, Claggett turned, told appellant that he didn't wish to hear from him, and pushed him away. Appellant responded with a push of his own, which led to a second push from Claggett. Appellant then pulled a gun and shot Claggett in the thigh, near the hip joint. There was evidence that he had aimed the gun at Claggett's waist. The shot knocked Claggett to the ground and ultimately required him to be hospitalized.

As a result of that incident, appellant was charged with, tried for, and convicted of assault with intent to murder, assault and battery, assault with intent to maim, and carrying a handgun. Upon these convictions, he was sentenced by the Circuit Court for Calvert County to twenty-five years in prison for assault with intent to murder and, concurrently, five years for assault, ten years for assault with intent to maim, and five years for carrying a handgun.

In this appeal, appellant makes two complaints:

"I. The jury returned defective verdicts of guilty of assault with intent to murder and assault with intent to maim.

II. The trial court imposed an illegal sentence."

*Inconsistent Verdicts*

Appellant claims that his convictions for assault with intent to murder and assault with intent to maim are inconsistent, as each requires a different and mutually exclusive specific intent.

The nature and elements of assault with intent to murder were succinctly described in *Bird v. State,* 231 Md. 432, 436, 190 A.2d 804 (1963), as follows:

> "The crime of assault with intent to murder is a statutory offense. See Code (1957), Art. 27, § 12. And although the statutory provision does not define the elements of the crime, it is necessary that there be proof of an assault and that it was with an intent to murder.... Intent involves the element of malice and must be such as would lead to a charge of murder if death should ensue.... The specific intent to take life need not be shown if the assault was committed under such circumstances that, if death had ensued, the crime would have been murder in either the first or second degree."

■ As made clear in *Bird,* in *Webb v. State,* 201 Md. 158, 93 A.2d 80 (1952), and later in *James v. State,* 31 Md.App. 666, 358 A.2d 595, *cert. denied* 278 Md. 725 (1976), and *Reed v. State,* 52 Md.App. 345, 449 A.2d 448, *cert. denied* 294 Md. 653 (1982), the intent to murder necessary to a conviction may rest upon the showing of an intent to commit grievous bodily harm, and that, in turn, is inferable from the use of a deadly weapon directed toward a vital part of the body.

Assault with intent to maim is also an offense that is proscribed, but not defined, by statute. Md.Code Ann. art. 27, § 386, makes it a felony to "unlawfully shoot at any person, or ... in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or ... unlawfully and maliciously stab, cut or wound any person, or ... assault or beat any person, with intent to maim, disfigure or disable such person." The maximum punishment for this crime is ten years imprisonment.

There is very little caselaw construing § 386. The terms "maim, disfigure or disable" may, and probably do, have some reference to the common law crime of mayhem and the statutory enlargement of it in art. 27, § 385, but we do not think they are limited by those substantive offenses. As pointed out in Gilbert and Moylan, *Maryland Criminal Law: Practice and Procedure*, § 3.9, common law mayhem consisted of depriving the victim of the "fighting members" of his body—his arms, legs, eyes, fingers, hands, or teeth— thus rendering him less able to defend himself. That crime still exists in Maryland in its common law form, although a statutory penalty for it is provided in § 384. Section 385, patterned after the Act of Coventry (22 and 23 Car. 2, c. 1), in effect, expands the common law offense by prohibiting other disfigurements and disablements as well—

"cutting out or disabling the tongue, putting out an eye, slitting the nose, cutting or biting off the nose, ear or lip, or cutting or biting off or disabling any limb or member of any person, of malice aforethought, with intention in so doing to mark or disfigure such person." Art. 27, § 385.

As § 386 makes no reference to either § 384 or § 385, as it was first enacted forty-four years after those other sections, and as the words "disfigure" and "disable," in their ordinary signification, would clearly include injuries other than those encompassed within §§ 384 and 385, we do not believe that the terms "maim, disfigure or disable" as used in § 386 are limited only to those injuries and disablements proscribed by §§ 384 and 385. Thus, to sustain a conviction under § 386, it is not necessary to prove an intent to commit an act which, if completed, would be punishable under § 384 or § 385. Any intent to disfigure or disable will suffice.

Like the intent to murder under § 12, an intent to maim, disfigure, or disable under § 386 may be established by showing an intent to do grievous bodily harm, and, as with a prosecution under § 12, that in turn may be inferred

from "the pointing of a gun toward another human and discharging it in random fashion." *Hoes v. State*, 35 Md. App. 61, 74, 368 A.2d 1080, *cert. denied* 280 Md. 731 (1977); *Mahoney v. State*, 13 Md.App. 105, 100, 281 A.2d 421 (1971), *cert. denied* 264 Md. 750, *cert. denied* 409 U.S. 978, 93 S.Ct. 306, 34 L.Ed.2d 241 (1972).

What we have, then, is the fact that the shooting of another person with either the direct or inferable intent to do grievous bodily harm can support a conviction under either statute. But the fact that an intent either to murder *or* to maim, disfigure, or disable may be found from such a circumstance does not mean that the requisite statutory intents are the same, or that one is subsumed into the other. They are, indeed, quite different, notwithstanding that they may rest upon the same evidence. An intent to maim, disfigure, or disable necessarily falls short of, and thus excludes, an intent to kill. The actor's object in such a case is *not* to end the victim's life, but to have him linger on, either temporarily or permanently, in a disabled or disfigured condition. Conversely, although death is obviously the ultimate form of disablement, it is far more than that; one does not generally regard a killing as merely an extreme form of disablement. It is not the marking or hobbling of the victim that is really intended, but the termination of his very existence. That is the critical, overriding intent, even if death is to be preceded, or caused, by injuries that but for the death would constitute a disfigurement or disablement. Thus, both rationally and realistically, an intent to kill excludes the lesser intent merely to maim, disfigure, or disable.

This question has not previously been decided in Maryland or, for that matter, anywhere else but Georgia. In *Marks v. State*, 230 Md. 108, 185 A.2d 909 (1962), *cert. denied* 373 U.S. 918, 83 S.Ct. 1308, 10 L.Ed.2d 417 (1963), the defendant was charged with "assault with intent to 'kill and murder' " under one indictment and assault with intent to maim, disfigure, or disable under another. The indictments arose from his having set his young son's shirt on

fire and then having refused to take the injured child to the hospital. The court, in announcing its verdicts, found him guilty of "assault with intent to kill" and assault with intent to maim, disfigure, or disable, and sentenced him to ten years, concurrently, on each. On appeal, Marks argued that "these two convictions were inconsistent, in that one necessarily excludes the other."

The Court never reached that issue, however, for it concluded that there was no such crime in Maryland as "assault with intent to kill," and thus reversed the judgment entered on the first indictment. That, of course, made the inconsistency question moot. The Court stated, 230 Md. at p. 111, 185 A.2d 909:

> "For the purposes of this appeal we shall assume, without deciding, that the verdicts were inconsistent. Apart from any matter of inconsistency, we find that [the] verdict finding the defendant guilty of 'assault with intent to kill' was an improper verdict on the charge of assault with intent to kill and murder...."

The only case directly addressing and deciding this issue that we could locate was *Swain v. State*, 91 Ga.App. 561, 86 S.E.2d 642 (1955). In *Swain*, the defendant was convicted of mayhem, which under Georgia law required an intent to maim, and of assault with intent to murder. Both charges arose from the single act of shooting a police officer with a shotgun, the blast effectively blinding him.

The appellate Court concluded, at p. 644, that "[t]he intent to murder is incompatible with the intent only to maim, and the jury, having convicted the defendant of having that intent, could not impute to him under the same evidence the intent only to maim." These were separate crimes, said the Court, and not merely separate degrees of the same offense. Thus, it held, the verdicts were repugnant. As repugnancy had not been raised as an issue, however, and as the evidence sufficed to sustain the conviction of assault with intent to murder, the Court affirmed that judgment and reversed the other.

Based solely on *Swain,* Perkins states that "[w]here the statutory requirement for mayhem includes a specific intent to maim or disfigure, the same act cannot constitute both mayhem and assault with intent to murder, and assault with intent to maim is not included in a charge of assault with intent to kill." R. Perkins, *Criminal Law,* 2d ed., p. 188.

■ Upon the reasoning we have set out above, as buttressed by *Swain* and marginally by *Marks,* we too conclude that assault with intent to murder and assault with intent to maim, disfigure, or disable are inconsistent crimes, and that, when based on a single act, convictions on both cannot stand. We depart from *Swain,* however, in terms of the remedy.

Appellant does not challenge in this appeal the sufficiency of the evidence to support either verdict, and we think, indeed, that the jury could rationally find from the fact that appellant aimed at Claggett's waist an intent either to murder or to disable. Under that circumstance, the jury should have been instructed to decide which, if either, of the crimes was committed, but not to return a verdict of guilty on both. Appellant did not request such an instruction, however, and none was given. We therefore cannot tell which of the two crimes the jury would have chosen had it been put to the choice.

Ordinarily, a defendant's failure to make a timely objection to the court's instructions, or to its omission to give an instruction, precludes appellate review of any error relating to the instructions. Subject to our discretionary right under Md.Rule 757h to "take cognizance of and correct any plain error in the instructions, material to the rights of the defendant," by not raising the issue below and affording the trial court an opportunity to correct the problem, the defendant is deemed to have waived his right to complain on appeal. Where the error arises from the rendition of inconsistent verdicts, however, although it could have been avoided by an appropriate instruction, it extends beyond the matter of instructions. As was pointed out in *Heinze v.*

*State*, 184 Md. 613, 42 A.2d 128 (1945), the court also has an independent duty not to accept inconsistent verdicts. At p. 617, 42 A.2d 128, the Court held:

> "It is a generally accepted rule that if the jury should return a verdict which is defective in form or substance, it should not be accepted by the trial judge. It is essential for the prompt and efficient administration of justice to prevent defective verdicts from being entered upon the records of the court as well as to ascertain the real intention of the jury in their finding. Where a verdict is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation."

*See also Glickman v. State*, 190 Md. 516, 60 A.2d 216 (1948); *Wright v. State*, 24 Md.App. 309, 330 A.2d 482, *cert. denied* 274 Md. 733 (1975).

Of course, the failure to request such action by the trial court may also result in a waiver under Md.Rule 1085, but there too we have discretion to consider the matter.

■ There have been a number of cases in which defendant/appellants have attempted to complain about inconsistent verdicts on appeal, without having raised the issue below. The "bottom line" of these decisions seems to be that, unless some real prejudice is shown, no relief will be granted. Implicit from that is that, if such prejudice *is* demonstrated, relief may be granted.

In *Bell v. State*, 220 Md. 75, 150 A.2d 908 (1958), inconsistent convictions for larceny and receiving stolen goods were handed down by a trial judge sitting without a jury. The Court of Appeals found that, by reason of the inconsistency, the verdicts were defective, but it affirmed the decision of the lower court on two grounds. It held first that "since the question was not raised below in any manner, it

may be that the defendant waived the inconsistency." *Bell,* 220 Md. at 81, 150 A.2d 908. The Court also concluded that, since only one sentence was imposed which was within the penalty prescribed for either of the offenses, "it does not appear that the defendant has been prejudiced . . . by the rendition of inconsistent verdicts . . . [and] we see no reason to make such inconsistency the basis for a remand of the case for further proceedings or a new trial." 220 Md. at 81, 150 A.2d 908. In a footnote, the Court explicitly recognized that if the trial court "had passed sentence on both of the inconsistent counts, a different question would be raised." 220 Md. at 81, n. 2, 150 A.2d 908.

In *Hardesty v. State,* 223 Md. 559, 165 A.2d 761 (1960), the trial court, sitting without a jury, handed down inconsistent verdicts, finding Hardesty guilty of both larceny and receiving stolen goods. Only one sentence was imposed, which was within the range permitted for both offenses. The Court of Appeals affirmed the judgments, relying on both waiver and lack of prejudice. *See also Boone v. State,* 2 Md.App. 80, 233 A.2d 476 (1967), but *compare Tender v. State,* 2 Md.App. 692, 237 A.2d 65 (1968), *cert. denied* 250 Md. 733, *cert. denied* 393 U.S. 1096, 89 S.Ct. 885, 21 L.Ed.2d 787 (1969); and *Price v. State,* 3 Md.App. 155, 238 A.2d 275, *cert. denied* 250 Md. 733 (1968).

This case presents that very circumstance noted in the footnote in *Bell, supra,* 220 Md. at 81, 150 A.2d 908. The court not only imposed separate sentences on both convictions, but the twenty-five year sentence meted out for assault with intent to murder far exceeded the ten-year maximum allowed for assault with intent to maim, disfigure, or disable. Clearly, there was prejudice here, and it is of sufficient magnitude to require that we exercise our discretion under Rules 757 and 1085 and take cognizance of the error. The question is what to do about it.

We seem to have two alternative options. One is to vacate both judgments and remand the case for retrial,

leaving it to a new jury (or judge) to determine which, if either, crime was committed. That course of action would be based on the fact that, as the evidence sufficed to support both verdicts, it should be left to the trier of fact, and not to us, to select which of the two inconsistent offenses was committed. *Cf. Heinze v. State, supra,* 184 Md. 613, 42 A.2d 128.

The other option, which is the one urged on us by appellant, is to resolve the inconsistency in his favor by vacating only the more onerous judgment—the assault with intent to murder—and permitting the lesser judgment to stand.[1] We took that approach in *Frye v. State,* 37 Md.App. 476, 378 A.2d 155 (1977), *aff'd* 283 Md. 709, 393 A.2d 1372 (1978).

Frye was convicted of first degree murder, armed robbery, and a handgun violation. The jury did not indicate whether the murder conviction was based on a finding of premeditated murder under art. 27, § 407 or felony murder under art. 27, § 410. The evidence would have supported either one. On the theory that the verdict rested on felony murder, Frye asked that we merge the armed robbery conviction into the murder conviction. If his premise were correct, the two convictions would merge; if, on the other hand, the murder conviction was based on a finding of premeditated murder, the two would not merge. We handled the matter thusly (p. 480, 378 A.2d 155):

> "As we have indicated, in the absence of such jury instructions and in light of the resultant verdicts, we are unable to state which of the permissible inferences the

---

1. In a footnote in his brief, appellant claims "because under the court's instructions the jury may have believed that one could be found guilty of both charges based upon identical conduct," and because for sentencing purposes this must be assumed "in order to avoid equal protection or due process violations, Appellant's sentence should be confined to the lesser of the two sentences." Appellant's brief, p. 6, n. 2.

jury drew in arriving at its verdict in the case *sub judice*. We resolve the doubt in favor of the appellant, and we vacate the judgments entered on the robbery with a deadly weapon and the related handgun charge."

■ We think that is the proper approach in this case as well, especially since it is the one requested by appellant. Accordingly, we shall reverse the judgment entered on the charge of assault with intent to murder and affirm the judgment based on assault with intent to maim, disfigure, or disable.

## Illegal Sentence

■ Appellant next claims that the court erred in failing to merge his conviction of assault with the conviction of assault with intent to maim, and that it was error for the court to sentence him separately for each conviction. Again, we agree.

■ Where a lesser offense and a greater one arise out of the same event, and the facts necessary to prove the lesser are essential elements of the greater, the offenses merge. *Simms v. State*, 288 Md. 712, 421 A.2d 957 (1980); *Brooks v. State*, 284 Md. 416, 397 A.2d 596 (1979); *Newton v. State*, 280 Md. 260, 373 A.2d 262 (1977); *Walker v. State*, 53 Md.App. 171, 452 A.2d 1234 (1982), *cert. denied* 296 Md. 63 (1983); *Loscomb v. State*, 45 Md.App. 598, 416 A.2d 1276 (1980), *aff'd* 291 Md. 424, 435 A.2d 764 (1981).

Assault with intent to maim, as we observed above, consists of an assault coupled with the intent to maim. Assault is therefore a lesser included offense, and would, as a matter of law, merge into the greater offense.

JUDGMENT OF ASSAULT WITH INTENT TO MURDER REVERSED; JUDGMENT OF ASSAULT WITH INTENT TO MAIM, DISFIGURE, OR DISABLE AFFIRMED; JUDGMENT OF ASSAULT VACATED; CALVERT COUNTY TO PAY THE COSTS.