515 A.2d 465

**STATE of Maryland**

v.

**Tony Lava JENKINS.**

**No. 129, Sept. Term, 1984.**

Court of Appeals of Maryland.

Oct. 7, 1986.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellant.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., SMITH,* ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

ELDRIDGE, Judge.

The issue in this case is whether separate sentences may be imposed for assault with intent to murder in violation of Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 12, and assault with intent to maim, disfigure or disable in violation of Art. 27, § 386, where both convictions are based upon a single act of assault.[1]

## I.

Tony Lava Jenkins was charged in the Circuit Court for Calvert County with assault with intent to murder, assault with intent to maim, disfigure or disable, simple assault and carrying a handgun, and he requested a jury trial. At trial the victim, Alfred Claggett, testified as follows. On May 13, 1983, Claggett and Mike Sharps drove to a store in Sunderland, Maryland. Upon arrival, Claggett got out of the car to speak to a friend. According to Claggett, when he returned a short time later he found Jenkins leaning on the car talking to Sharps. Claggett said that he tapped Jenkins on the shoulder and told him to "lean off" the car. Claggett then proceeded toward the store. Claggett stated that Jenkins followed him, mumbling something unintelligible. Claggett turned to face Jenkins, told him that he

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. This question was specifically reserved in *Marks v. State*, 230 Md. 108, 185 A.2d 909 (1962).

"didn't want to hear what he had to say," and pushed him away. After retreating approximately eight feet, Jenkins "got a gun from his side," shot Claggett, and left. Claggett was wounded in the upper part of his right leg, at the hip joint.

Donald Turner, an employee of the store, testified that he saw Jenkins and Claggett "square off" after pushing apart from each other. He testified that he saw Jenkins take a gun from somewhere around his belt area, extend his arm straight forward with the gun pointing to Claggett's belt level and fire. Only one shot was fired.

Jenkins testified in his own behalf. His version of the facts differed significantly from Claggett's. In particular he stated that he had not been leaning on Claggett's car and that Claggett had hit him twice. He testified that Claggett stepped back, but that another person then charged toward him at full force. Jenkins said that he then saw Claggett reach for a gun which provoked him "to pull and fire his own weapon." Jenkins claimed that he discharged his gun toward the ground and had no intention of hurting anyone. On cross-examination, Jenkins said that the version of the facts set forth in his testimony was an accurate summary of what occurred, as opposed to his written statement which contained no reference to Claggett having had a weapon or a second person having been involved in assaulting him.

The jury convicted Jenkins on all four counts. He was sentenced to concurrent prison terms of twenty-five years for assault with intent to murder,[2] ten years for assault with intent to maim, disfigure or disable,[3] five years for simple assault and five years for carrying a handgun.

Jenkins appealed to the Court of Special Appeals which reversed the conviction for assault with intent to murder.

---

**2.** The maximum sentence for assault with intent to murder is 30 years. Art. 27, § 12.

**3.** Ten years is the maximum sentence for assault with intent to maim, disfigure or disable. Art. 27, § 386.

*Jenkins v. State,* 59 Md.App. 612, 477 A.2d 791 (1984). The Court of Special Appeals "conclude[d], as a general rule, that, when arising from a single act, these crimes [assault with intent to murder and assault with intent to maim, disfigure or disable] are inconsistent. A person cannot, in other words, based on a single act that might serve to establish either crime, be convicted of and sentenced for both." 59 Md.App. at 615, 477 A.2d 791. The appellate court further stated that in resolving the inconsistency, the criminal defendant was entitled to the benefit of any doubt; thus the conviction would stand only on the crime with the lesser penalty—assault with intent to maim, disfigure or disable.[4]

In reaching its conclusion, the Court of Special Appeals found that the intent elements of the crimes were inconsistent. The court was of the view that "[a]n intent to maim, disfigure, or disable necessarily falls short of, and thus excludes, an intent to kill. The actor's object in such a case is *not* to end the victim's life, but to have him linger on, either temporarily or permanently, in a disabled or disfigured condition." 59 Md.App. at 618, 477 A.2d 791. With regard to assault with intent to murder, the appellate court held that an intent to kill was an element of the offense. The court went on (*ibid.*):

"[A]lthough death is obviously the ultimate form of disablement, it is far more than that; one does not generally regard a killing as merely an extreme form of disablement. It is not the marking or hobbling of the victim that is really intended, but the termination of his very existence. That is the critical, overriding intent, even if death is to be preceded, or caused, by injuries that but for the death would constitute a disfigurement or disablement. Thus, both rationally and realistically, an intent to kill

---

4. The court also vacated the conviction for simple assault, holding that it merged with the conviction for assault with intent to maim, disfigure or disable because simple assault is a lesser included offense.

excludes the lesser intent merely to maim, disfigure, or disable."

The Court of Special Appeals also pointed out that, while the same evidence could support a finding of either intent, the intent element of each crime was quite different, saying (*id.* at 617–618, 477 A.2d 791):

"Like the intent to murder under § 12, an intent to maim, disfigure, or disable under § 386 may be established by showing an intent to do grievous bodily harm, and, as with a prosecution under § 12, that in turn may be inferred from 'the pointing of a gun toward another human and discharging it in random fashion.' *Hoes v. State,* 35 Md.App. 61, 74, 368 A.2d 1080, *cert. denied* 280 Md. 731 (1977); *Mahoney v. State,* 13 Md.App. 105, 110, 281 A.2D 421 (1971), *cert. denied* 264 Md. 750, *cert. denied* 409 U.S. 978, 93 S.Ct. 306, 34 L.Ed.2d 241 (1972).

"What we have, then, is the fact that the shooting of another person with either the direct or inferable intent to do grievous bodily harm can support a conviction under either statute. But the fact that an intent either to murder *or* to maim, disfigure, or disable may be found from such a circumstance does not mean that the requisite statutory intents are the same, or that one is subsumed into the other. They are, indeed, quite different, notwithstanding that they may rest upon the same evidence."

Because the two intents were deemed mutually exclusive, the Court of Special Appeals held "that assault with intent to murder and assault with intent to maim, disfigure, or disable are inconsistent crimes, and that, when based on a single act, convictions on both cannot stand." *Id.* at 620, 477 A.2d 791. Reliance was placed upon *Swain v. State,* 91 Ga.App. 561, 86 S.E.2d 642 (1955), and R. Perkins, *Criminal Law,* 188 (2d ed 1969).[5]

---

**5.** A very recent opinion of the Court of Special Appeals dealing with the same two offenses is *Glenn v. State,* 68 Md.App. 379, 511 A.2d 1110 (1986), petition for a writ of certiorari filed August 27, 1986.

Thereafter, we granted the State's petition for a writ of certiorari which presented the following two questions:

"1. Whether the Court of Special Appeals erred in its determination that the 'intent' requirements for 'assault with intent to murder' and 'assault with intent to maim, disfigure, or disable' are mutually exclusive such that, when based on a single act, convictions on both cannot stand?

"2. Assuming *arguendo* that the convictions cannot both stand, whether the Court of Special Appeals erred in determining that the appropriate remedy was to vacate the assault with intent to murder conviction without affording the State an opportunity for a new trial?"

With respect to the first question, the State does not disagree with the Court of Special Appeals' characterization of assault with intent to maim, disfigure or disable. Instead, the State's principal argument relates to the intent element of assault with intent to murder. The State contends that the Court of Special Appeals erred in "view[ing] the 'intent to do grievous bodily harm,' not as a separate intent capable of supporting the conviction, but rather an intent from which a specific intent to kill could be inferred." (Brief p. 7). It is argued "that an intent to do grievous bodily harm does not support a conviction for assault with intent to murder because it gives rise to an inference of a specific intent to kill. Rather, it is sufficient because such intent would be sufficient, in and of itself...." (*Id.* p. 8). The State concludes that an intent to do grievous bodily harm and an intent to maim, disfigure or disable are not mutually exclusive, and that, therefore, guilty verdicts of assault with intent to murder and assault with intent to maim, disfigure or disable, based on the same act, are not inconsistent. (*Id.* pp. 8–9).

As an alternate argument under the first question presented, the State notes that even if an intent to murder must be found for a conviction of assault with intent to murder,

"it still does not stand to reason that an 'intent to murder' and an 'intent to maim' are mutually exclusive. A perpetrator lacking confidence in his marksmanship may specifically intend to kill or, disjunctively, intend that the victim at least be disabled. The fact that the perpetrator may ultimately be successful in achieving, at most, one of these intents does not render it impossible to harbor both intents at the time of the assault." (Brief p. 9 n. 3). Finally, the State maintains that if the convictions are inconsistent, the appropriate remedy is a remand for a new trial and not a reversal of the conviction carrying the greater penalty. The defendant's argument, on the other hand, reflects the position adopted by the Court of Special Appeals.

## II.

The few cases dealing, in various contexts, with the relationship between the statutory offenses of assault with intent to murder (or in some jurisdictions assault with intent to kill) and assault with intent to maim, disfigure or disable (or an essentially similar offense) have taken different viewpoints.

For example, in the case relied on by the Court of Special Appeals, *Swain v. State, supra*, 91 Ga.App. at 564, 86 S.E.2d 642, the Georgia court held that the offenses were inconsistent because of the imcompatibility of the intents, saying: "The intent to murder is incompatible with the intent only to maim, and the jury, having convicted the defendant of having that intent, could not impute to him under the same evidence the intent only to maim."

In *State v. Kuchmak*, 159 Ohio St. 363, 112 N.E.2d 371 (1953), where the court was dealing with an Ohio statute authorizing a jury to convict a defendant of a lesser included offense than the offense charged, the Ohio Supreme Court held that "the offense of 'assault with intent to maim' is [not] a 'lesser included offense' within the offense of 'assault with intent to kill' ... [under] [t]he test ... that ... where all the elements of an offense are included

among the elements of a charged offense, the former is a lesser included offense." 159 Ohio St. at 366, 112 N.E.2d 371. The court decided that "a charge of an assault 'with intent to kill' will not warrant a conviction of an assault 'with intent to maim,' the latter intent not being included in the former." *Id.* at 369, 112 N.E.2d 371.

A similar conclusion was reached much earlier by the Supreme Court of Wisconsin in *Kilkelly v. The State,* 43 Wis. 604 (1878), where the defendant was charged with assault with intent to murder but was convicted of assault with intent to maim or disfigure, on the theory that, based on the elements of the offenses, assault with intent to maim or disfigure was a lesser included offense. In reversing the conviction, the Supreme Court of Wisconsin stated (43 Wis. at 608):

> "Hence, on this information, the plaintiff in error may lawfully be convicted, either of an assault with the felonious intent charged, or of a simple assault and battery, or of a mere assault. But we are aware of no rule of criminal procedure which sanctions a conviction for a given felonious intent, on an indictment or information which does not charge such intent, but *charges another intent of an entirely different character.*" (Emphasis supplied).

The above-quoted language seems to support the position of the Court of Special Appeals that the two intents are mutually exclusive.

On the other hand, in *Birker v. The State,* 118 Wis. 108, 112, 94 N.W. 643 (1903), the Supreme Court of Wisconsin later held that "assault with intent to do great bodily harm" was a lesser included offense of assault with intent to murder. The court viewed its decision in *Birker* as modifying *Kilkelly v. State, supra.*

In *People v. Kynette,* 15 Cal.2d 731, 104 P.2d 794, 809–810 (1940), *cert. denied,* 312 U.S. 703, 61 S.Ct. 806, 85 L.Ed. 1136 (1941), *overruled on other grounds, People v. Bonelli,* 50 Cal.2d 190, 324 P.2d 1 (1958), *People v. Sharer,* 61 Cal.2d

869, 40 Cal.Rptr. 851, 395 P.2d 899 (1964), the court took the position that assault with intent to murder and use of explosives with intent to injure were not inconsistent offenses, as "an intent to injure is of necessity a part of an intent to kill, particularly when, as here, the latter intent is attempted to be effectuated by means of an explosive which necessarily must tear and maim the body of the victim." 104 P.2d at 810. The California court went on to hold that, while the offenses were not inconsistent, the legislature did not intend to permit "more than one punishment for an act 'punishable in different ways by [the] different [statutory] provisions'...." *Ibid.*

While there appears to be case law suggesting several different views of the relationship of the two offenses, *e.g.,* that they are inconsistent, or that they do not merge, or that one merges into the other in light of the elements, or that there is a merger by legislative intent, nevertheless no case has been cited to us, and we are aware of none, supporting the State's primary position here, namely that entirely separate convictions and sentences may be imposed for each offense even when based upon the same act of assault.

### III.

We disagree with the State's principal argument that the Court of Special Appeals incorrectly characterized the offense of assault with intent to murder under Maryland law.

■ Contrary to the State's premise, the critical element of assault with intent to murder, as the plain statutory language demonstrates, is an "intent to murder." The offense is not "assault with intent to do grievous bodily harm," which is how the State seems to view it. Instead, the Court of Special Appeals correctly held that facts showing an intent to do grievous bodily harm may give rise, as an evidentiary matter, to an inference of an intent to murder.

In support of its position, the State relies upon language in *Hall v. State,* 213 Md. 369, 375, 131 A.2d 710 (1957), and *Webb v. State,* 201 Md. 158, 161–162, 93 A.2d 80 (1952). The language from *Webb* relied on is a quotation from *Wharton, Criminal Law,* § 841 (12th Ed.), that " '[i]t is not necessary, however, to sustain such an indictment [for assault with intent to murder] that a specific intent to take life should be *shown,*' " and that a showing of an intent " 'to commit grievous bodily harm' " would suffice. 201 Md. at 161–162, 93 A.2d 80, emphasis supplied. While this quotation was perhaps an unfortunate use of language, the Court in *Webb* immediately thereafter quoted from *Wharton, Criminal Evidence* (11th Ed.) and an earlier Maryland case as follows (201 Md. at 162–163, 93 A.2d 80, emphasis supplied):

"In *Wharton, Criminal Evidence* (11th Ed.) Section 79, it is said: 'If intent is an element, the State must introduce evidence to show it. However, since intention is a fact which cannot be positively known to other persons, no one can testify directly concerning it and the matter must be an inference which the jury must find from established facts.'

"In *Fenwick v. State,* 63 Md. 239, *recognizing that intent to murder was 'a material fact set forth in the indictment,'* it was held that the trial court erred in refusing to permit the accused to be interrogated as to his purpose in obtaining the weapon, in that case an ax. That an accused is competent to testify as to his intent is generally recognized. See *Wharton, Criminal Evidence* (11th Ed.) Section 135. It does not follow that such testimony is conclusive upon the trier of facts.

"In the instant case it can hardly be denied that the accused drew his weapon in the first instance to intimidate and enforce compliance with his orders and to resist interference. It may also be inferred from the fact, if believed, that he twice threatened to shoot unless the victim desisted from her efforts to drag Reba into the house, that he intended to carry out the threat. We

cannot find that the trial judge, who saw and heard the witnesses, was clearly wrong in disbelieving the story of the accused, who had spent several years in the army and was presumably familiar with firearms, that the discharge of the weapon was accidental, or that he did not intend to shoot. The evidence supports an inference that he intended to shoot the prosecuting witness as he had threatened to do.

"Nor can we find that the trial judge was clearly wrong *in finding that the intent was to commit murder* as distinguished from manslaughter."

And earlier, the Court in *Webb* stated (201 Md. at 161, 93 A.2d 80, emphasis supplied):

"To support a charge of assault with intent to murder it is generally recognized that *there must be proof of both an assault and an intention to murder.* The intent cannot be inferred from the mere fact of the assault, although the character of the assault and the use of a deadly weapon are factors to be considered. *Acers v. United States,* 164 U.S. 388, 17 S.Ct. 91, 41 L.Ed. 481, and note. Neither can the intent be established as a matter of law from the mere use of a deadly weapon. *Lanier v. The State,* 106 Ga. 368; *Hochheimer, Criminal Law* (3rd Ed.) Section 29."

Considering the language from *Webb* as a whole, there is no doubt that this Court held that "an intent to murder" is an element which the prosecution is required to prove, although as an evidentiary matter such proof can be based upon a showing of or inference from certain other factors or circumstances.

The language from the *Hall* case invoked by the State is as follows (213 Md. at 375, 131 A.2d 710, emphasis supplied):

"If the assault was committed under circumstances such that, if death ensued, the crime would have been murder ..., it is not necessary to sustain such a charge [of

assault with intent to murder] that a specific intent to take life should be *shown. Webb v. State....*"

Like some of the language from *Webb,* the above-quoted passage may be somewhat misleading. Nevertheless, it is not necessarily inconsistent with the view that an intent to kill is the critical element of the offense but that, as an evidentiary matter, this need not be shown directly but may be shown by or inferred from circumstances.

Other cases in this Court demonstrate that the Court of Special Appeals properly characterized the offense of assault with intent to murder. Thus, in *Beall v. State,* 203 Md. 380, 101 A.2d 233 (1953), with regard to the sufficiency of the evidence underlying a conviction for assault with intent to murder, the Court stated as follows (203 Md. at 384–385, 101 A.2d 233, emphasis supplied):

"The intent to murder cannot be inferred from the fact of a mere assault. *There must be proof not only of an assault but of an intent to murder.* Nor does the threatened use of a deadly weapon establish intent to murder as a matter of law. Intent is the essence of the offense.... However, the character of the assault and the use of a deadly weapon are pertinent factors to be considered. The State must offer evidence to show the intent. However, since intent is a fact which cannot be positively known to persons other than the accused, the jury or the court sitting without a jury must find such intent from established facts."

Numerous cases make it clear that evidence showing a design to commit grievous bodily injury, such as using a deadly weapon directed at a vital part of the body, is sufficient because it gives rise to an evidentiary *inference* of an intent to murder. The Court explained in *Davis v. State,* 204 Md. 44, 51–52, 102 A.2d 816 (1954):

"Since intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence.

Malice and, so intent to murder, may be inferred from all the facts and circumstances of the occurrence. The, deliberate selection and use of a deadly weapon directed at a vital part of the body is a circumstance which indicates a design to kill, since in the absence of evidence to the contrary, the law presumes that one intends the natural and probable consequences of his act.... In the *Webb* case, we said that: 'Neither can the intent be established as a matter of law from the mere use of a deadly weapon.' If, however, the use of the deadly weapon directed at a vital part of the body is shown, this is a fact, not a presumption of law, which ... permits the inference...."

*See, e.g., Taylor v. State,* 238 Md. 424, 433, 209 A.2d 595 (1965) ("An intent to murder may, under proper circumstances, be inferred by the use of a deadly weapon directed at a vital part of the human body"); *Oakley, Etc. v. State,* 238 Md. 48, 53, 207 A.2d 472 (1965), *cert. denied,* 384 U.S. 1021, 86 S.Ct. 1927, 16 L.Ed.2d 1022 (1966) (defendants "cut [the victim] in and about vital parts of his body.... These facts were sufficient to justify a permissible inference of an intent to kill"); *Ferrell v. State,* 234 Md. 355, 356, 199 A.2d 362 (1964) ("The character of the assault, coupled with the use of a deadly weapon directed at a vital part of the victim's body and the threat to kill, justified the jury in finding an intent to murder"); *Bird v. State,* 231 Md. 432, 436, 190 A.2d 804 (1963) ("the appellant admitted the assault, and the intent to kill was inferable from the use of a deadly weapon directed toward a vital part of the body"); *Wimbush v. State,* 224 Md. 488, 489, 168 A.2d 500 (1961) ("the intent to kill was inferable from the use of a deadly weapon directed at a vital part of the body"); *Couser v. State,* 221 Md. 474, 476, 157 A.2d 426, *cert. denied,* 364 U.S. 840, 81 S.Ct. 77, 5 L.Ed.2d 64 (1960) ("The use of a deadly weapon directed at a vital part of the body is a circumstance which indicates a design to kill").

Moreover, in *Avey v. State,* 249 Md. 385, 388–389, 240 A.2d 107 (1968), this Court held that a specific intent to

murder was an element of assault with intent to murder, and that in a prosecution for the offense, where the evidence generates an intoxication issue, the defendant was entitled to "an instruction on the question whether Avey was intoxicated to such a degree that he lacked the capacity to form a specific intent to murder." 249 Md. at 389, 240 A.2d 107. *See German v. State,* 231 Md. 111, 112, 188 A.2d 699 (1963) ("there was ample evidence from which the trial court could find malice and a specific intent to murder in this assault by appellant"); L. Hochheimer, *Crimes and Criminal Procedure,* 294 (2d ed. 1904) ("In order to constitute assault with intent to murder ... it is essential, that there should be an actual specific intent to take life"); L. Hochheimer, *A Manual of Criminal Law as Established in the State of Maryland,* 139–141 (1889); R. Perkins, *Criminal Law, supra,* at 763, 764. *See also Shell v. State,* 307 Md. 46, 61, 512 A.2d 358 (1986).

■ In sum, the intent element of assault with intent to murder requires proof of a specific intent to kill under circumstances such that, if the victim had died, the offense would be murder. That an intent to murder may be shown by or inferred from facts showing an intent to do grievous bodily harm, does not convert the statutory offense to "assault with intent to do grievous bodily harm."

■ Assault with intent to maim, disfigure or disable, however, requires one of these three enumerated statutory intents, all of which are separate and distinct from an intent to murder. We agree with the Court of Special Appeals that intent to maim, or intent to disfigure, or intent to disable, all contemplate that the victim shall live. We agree that an intent to murder is not merely an extreme form of an intent to maim or disfigure or disable but is different in kind. Consequently, in our view, the Court of Special Appeals correctly held that the intent elements of the two statutory offenses are inconsistent or mutually exclusive.

## IV.

■ While we agree that the *intents* are inconsistent, we do not agree with the Court of Special Appeals' conclusion that the *offenses* are inconsistent in the same sense that the common law crimes of larceny and receiving were deemed inconsistent. Instead, we believe that there is logic in the State's suggestion that a perpetrator of an assault may harbor both intents at the time of the assault. Although the intents remain inconsistent or mutually exclusive, they can be held disjunctively.

Thus, in committing an assault, the perpetrator might intend that the victim die. At the same time, the perpetrator might have an alternate intent that, if the victim does not die, he at least be maimed or disfigured or disabled. The fact that the intents may be mutually exclusive does not preclude their being held as alternatives by the same person at the same time. The second intent is held as a conditional matter, conditioned upon the first intent not being achieved. The criminal law recognizes the possibility of conditional and qualified intents. *See* R. Perkins, *Criminal Law, supra,* at 575, 580–582.

The reason that offenses like larceny and receiving are deemed inconsistent in Maryland is not because the inconsistent intents may not be harbored at the same time. For example, a person may desire a particular item of property and intend to steal it; at the same time, realizing that he may be unable to steal the property, he may alternately intend to purchase it from someone else who steals the property. The inconsistent intents may coexist as alternatives. What renders larceny and receiving inconsistent offenses is the fact that both intents cannot be carried out. "[I]n law a thief cannot be guilty of the crime of receiving stolen goods which he himself has stolen, and a guilty receiver of stolen goods cannot himself be the thief," *Heinze v. State,* 184 Md. 613, 617, 42 A.2d 128 (1945). As the Court expressed it in *Bell v. State,* 220 Md. 75, 81, 150 A.2d 908 (1959), "a defendant cannot *be* both a thief and a receiver when it is apparent that the property alleged to

have been stolen is the same as that alleged to have been received." (Emphasis supplied).

When, however, the sole difference between two offenses is in the subjective intents of the perpetrators, rather than the achievement of the intents, it would seem logical that the same perpetrator may at the same time commit both offenses. This is because one may harbor at the same time, on an alternate basis, inconsistent intents.

## V.

Although assault with intent to murder and assault with intent to maim, disfigure or disable may not be inconsistent, and although each offense may have distinct elements, we do not believe that the General Assembly intended that separate convictions and sentences be imposed where there is but a single act of assault. In this situation, the conviction of assault with intent to maim, disfigure or disable should be merged into the conviction of assault with intent to murder.

The normal test for determining whether one offense merges into another is the so-called "same evidence test" or "required evidence test" or, as it is often labeled, the *"Blockburger* test." [6] This test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter. *Hawkins v. State,* 291 Md. 688, 691–692, 436 A.2d 900 (1981); *Whack v. State,* 288 Md. 137, 141–142, 416 A.2d 265, (1980), *appeal dismissed* and *cert. denied,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981); *Brooks v. State,* 284 Md. 416, 397 A.2d 596 (1979); *Johnson v. State,* 283 Md. 196, 203–204, 388 A.2d 926 (1978); *Veney v. State,* 227 Md. 608, 611–614, 177 A.2d 883 (1962). *See generally Mason v. State,* 302 Md. 434, 441, 488 A.2d 955 (1985); *Ward v. State,* 290 Md. 76, 92, 427 A.2d 1008 (1981);

---

6. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

*Simms v. State,* 288 Md. 712, 718–719, 722–723, 421 A.2d 957 (1980); *Sweetwine v. State,* 288 Md. 199, 206, 421 A.2d 60, *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980); *Lewis v. State,* 285 Md. 705, 722–723, 404 A.2d 1073 (1979); *State v. Frye,* 283 Md. 709, 714–715, 393 A.2d 1372 (1978); *Newton v. State,* 280 Md. 260, 266–268, 373 A.2d 262 (1977).

Nevertheless, we have recognized on several occasions that the required evidence test, while the normal standard, is not the exclusive standard for determining merger of offenses. *Whack v. State, supra,* 288 Md. at 143, 416 A.2d 265; *Brooks v. State, supra,* 284 Md. at 423, 397 A.2d 596; *Newton v. State, supra,* 280 Md. at 274 n. 4, 373 A.2d 262. *See also State v. Oliver,* 302 Md. 592, 611 n. 12, 490 A.2d 242 (1985); *Cousins v. State,* 277 Md. 383, 397, 354 A.2d 825, *cert. denied,* 429 U.S. 1027, 97 S.Ct. 652, 50 L.Ed.2d 631 (1976). As stated in *Brooks v. State, supra,* 284 Md. at 423–424, 397 A.2d 596,

"even though offenses may be separate and distinct under the required evidence test, courts occasionally find as a matter of statutory interpretation that the Legislature did not intend, under the circumstances involved, that a person could be convicted of two particular offenses growing out of the same act or transaction. *See, e.g., Simpson v. United States,* 435 U.S. 6, 13–16, 98 S.Ct. 909 [913–915], 55 L.Ed.2d 70 (1978); *United States v. Gaddis,* 424 U.S. 544, 547–548, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976); *Ladner v. United States,* 358 U.S. 169, 173–178, 79 S.Ct. 209 [211–214], 3 L.Ed.2d 199 (1958); *Prince v. United States,* 352 U.S. 322, 327, 77 S.Ct. 403 [406], 1 L.Ed.2d 370 (1957); *Bell v. United States,* 349 U.S. 81, 83–84, 75 S.Ct. 620 [622–623], 99 L.Ed. 905 (1955); *Thessen v. State,* 508 P.2d 1192, 1195–1197 (Alas.1973); *Manning v. United States,* 270 A.2d 504, 506 (D.C.1970); *State v. McCarroll,* 337 So.2d 475, 478–479 (La.1976)."

Where the same single act of assault meets the statutory requirements for different aggravated assaults, courts have not ascribed to legislatures the intent that separate convic-

tions and sentences be imposed. Thus, in *Ingram v. United States*, 353 F.2d 872 (D.C.Cir.1965), the defendant had been convicted of one count of assault with intent to kill, in violation of D.C.Code § 22–501, and one count of assault with a dangerous weapon, in violation of D.C.Code § 22–502, based on a single act of assault with a knife. The court analyzed the statutory scheme as follows (*id.* at 875):

"The District of Columbia Code sets out in four provisions the definitions and punishments for four kinds of assault with descending degrees of severity: D.C.Code § 22–501, Assault with intent to kill, rob, rape, or poison (15 years maximum); D.C.Code § 22–502, Assault with intent to commit mayhem or with dangerous weapon (10 years); D.C.Code § 22–503, Assault with intent to commit any other offense (5 years); D.C.Code § 22–504, Simple Assault (1 year). This structure suggests that the offenses of assault with intent to kill and assault with a dangerous weapon are regarded as offenses on the same spectrum, the former being worse than the latter. The statute suggests a gradient of aggravated assaults. Although the various sections may define 'separate and distinct offenses,' it is unlikely that Congress intended a single act to be punished cumulatively as both a more *and* a less serious form of aggravated assault."

Relying on this statutory structure and the policy that "[d]oubts in this area of the law are resolved not only in favor of lenity, but in favor of rational and reasonable probabilities of legislative intent where such intent is left unclear," 353 F.2d at 875, the court vacated the defendant's consecutive sentences.[7] *See*, in addition, *Smith v. United States*, 418 F.2d 1120, 1121 (D.C.Cir.), *cert. denied*, 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969).

---

**7.** The *Ingram* court placed considerable emphasis on the fact that the sentences imposed were consecutive, not concurrent. In Maryland, however, even though the sentences imposed for two offenses which merge upon conviction are concurrent, the judgment of conviction and sentence on the lesser offense must be vacated. *Newton v. State*, 280 Md. 260, 265, 373 A.2d 262 (1977), and cases cited therein.

In *Wilkerson v. State*, 41 Ala.App. 265, 130 So.2d 348, *cert. denied*, 272 Ala. 712, 130 So.2d 350 (1961), the Alabama Court of Appeals held that the defendant could not be convicted of both assault with intent to murder and assault with intent to ravish. The court quoted *State v. Chinault*, 55 Kan. 326, 40 P. 662, 663 (1895), where it was said:

"Both informations charge offenses under the same section of the statutes, viz. section 38 of the act regulating crimes and punishments. Both informations refer to the same acts, the only difference being that a different criminal purpose is attributed to the defendant. We think under this section the substantive offense is the assault. The intent with which it was committed characterizes it and determines its degree of criminality. Only one prosecution can be maintained under this section for the same assault, whatever the purpose of the defendant may have been."

In *Commonwealth ex rel. Russo v. Ashe, Warden*, 293 Pa. 322, 142 A. 317 (1928), the trial court had imposed consecutive sentences on counts of assault with intent to murder and assault with intent to maim and disfigure, and the Pennsylvania Supreme Court vacated the sentence for assault with intent to maim. *See People v. Kynette, supra*, 104 P.2d at 810; *State v. Richardson*, 460 S.W.2d 537, 539 (Mo.1970).

The Court of Special Appeals reached a somewhat similar conclusion concerning the statutory aggravated assaults in *Manigault v. State*, 61 Md.App. 271, 486 A.2d 240 (1985). Judge Moylan there noted for the court (61 Md.App. at 285 n. 2, 486 A.2d 240):

"Indeed, an assault with intent to rob and an assault with intent to murder arising out of the same attack are not separate crimes at all, but rather separate modes of aggravating a common crime. A defendant who has assaulted his victim with the concomitant specific intents to rape her, to rob her, and to kill her, has committed not three crimes but one. That one has simply been aggravated upward to the felony plateau in three different ways.

An uncritical application of the *Blockburger* test, simply comparing elements, might make it appear that assault with intent to rob, assault with intent to murder, and assault with intent to rape are all separate crimes because each possesses a distinct element. It is not a proper occasion to apply the *Blockburger* test, however, because these are but various forms of aggravating a common undergirding offense. By the same token, an uncritical application of the *Blockburger* test would indicate that premeditated murder and felony-murder are separate crimes, but we know that they are but alternative modes of aggravating a single crime.

"A murder aggravated up to the first-degree level two separate ways does not become two murders. Neither does an assault aggravated up to the felonious level in two separate ways become two assaults.

"It might facilitate our ability to conceptualize the relationship if we thought of common law assault as 'assault in the second degree' and of the various aggravated assaults as forms of 'assault in the first degree.'"

We agree that assault with intent to murder and assault with intent to maim, disfigure or disable, when based on the same single act of assault, should not be viewed as entirely separate crimes for purposes of conviction and sentence. Rather, as the courts generally hold, one aggravated assault should be viewed as merging into the other aggravated assault.

■ With regard to merger based on the required evidence test, the maximum sentence which each offense carries does not determine which offense merges into the other; this is governed by the elements of each offense. *See, e.g., Johnson v. State,* 283 Md. 196, 388 A.2d 926 (1978). Nevertheless, as the previously cited cases concerning the merger of aggravated assault offenses indicate, where there is merger by legislative intent, the offense carrying the lesser maximum penalty merges into the offense carrying the greater penalty. *See,* in addition, *e.g., State v. Gracia,* 121 Ariz. 417, 590 P.2d 1363 (1979); *Neal v.*

*State,* 55 Cal.2d 11, 357 P.2d 839, 844, 9 Cal.Rptr. 607, 612 (1960), *cert. denied,* 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961); *Commonwealth v. Jones,* 382 Mass. 387, 416 N.E.2d 502 (1981); *State v. Matilla,* 339 N.W.2d 54 (Minn. 1983); *State v. Roleson,* 14 N.J. 403, 102 A.2d 606, *cert. denied,* 347 U.S. 947, 74 S.Ct. 647, 98 L.Ed.2d 1095 (1954); *Commonwealth v. Nelson,* 452 Pa. 275, 305 A.2d 369 (1973). In the instant case, therefore, the conviction for assault with intent to maim, disfigure or disable should have been viewed as merging into the conviction for assault with intent to maim, disfigure or disable should have been viewed as merging into the conviction for assault with intent to murder.

Consequently, the Court of Special Appeals erred in reversing Jenkins's conviction and sentence for assault with intent to murder. On the other hand, the conviction and sentence for assault with intent to murder.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE EQUALLY DIVIDED.