597 A.2d 1023

**Darel Marcel ALSTON**

v.

**STATE of Maryland.**

**No. 1950 Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 4, 1991.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Md., and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before MOYLAN, ROSALYN B. BELL and DAVIS, JJ.

DAVIS, Judge.

Darel Marcel Alston, appellant, was convicted by a jury in the Circuit Court for Baltimore County on April 24, 1990, before the Hon. James T. Smith, Jr., of robbery with a deadly weapon and related offenses. On October 12, 1990, the court imposed consecutive sentences of twenty years imprisonment and five years imprisonment.[1] The counts for robbery, theft, and the use of a handgun in the commission of a felony all merged into the robbery count for sentencing purposes. Appellant raises the following questions for our review:

1. Did the lower court err in denying the appellant's Motion to Suppress?

2. Did the lower court base the appellant's sentence on improper considerations?

3. Did the lower court impose an illegal sentence for assault?

Inasmuch as the appellee has conceded on the appellant's third issue, we shall remand to the circuit court to correct the appellant's sentence.

## STATEMENT OF FACTS

On May 12, 1989, Jeanine A. Beliveau was working as a night auditor at the Quality Inn West in Baltimore County. At about 3:45 a.m. on that day, a man entered the lobby of the Inn. Ms. Beliveau greeted him and asked if he would like a room, to which he responded, "Yes." Ms. Beliveau turned away to get a blank form, and as she turned around, the man pointed a gun at her face and demanded all of the money in the register. The man then walked around the desk and stood behind Ms. Beliveau. As he did, the appellant, wearing jeans, a red hooded shirt, and a white hockey goalie's mask, came through the lobby door and held a

---

1. The counts for robbery and theft merged into the robbery with a deadly weapon count for sentencing purposes.

canvas bag open in front of Ms. Beliveau. As the appellant held the bag open, the man behind the counter removed all of the money from the Inn's cash register and placed it in the bag.

After emptying the register, the man demanded that Ms. Beliveau open the safe. She told him that she did not know the combination, that only managers knew the combination. The man then cocked the hammer of the gun and said, "I am going to blow your f--king head off if you don't open the safe now!" Ms. Beliveau closed her eyes and said, "I don't know the combination to the safe. Only the assistant manager and manager know it, and they are not here." The man then grabbed her arm, pushed her into a bathroom, wedged a chair under the doorknob, and departed.

Detectives Earl A. Fowlkes and Ronald Sappington interviewed the appellant at the Anne Arundel County Detention Center, where he was being held on unrelated charges. The detectives informed the appellant that they were investigating an armed robbery and advised him of his *Miranda* rights [2] from a standard rights form supplied by the Anne Arundel County Police Department. After appellant was read his rights, he was asked if he understood them, and he signed the form stating that he understood. He then waived his rights and agreed to talk with the detectives.

The detectives originally questioned the appellant about a robbery that occurred at the "Dash–In" convenience store in Anne Arundel County. After discussing the appellant's involvement in that robbery, the appellant was questioned about various other robberies in Anne Arundel County. The detectives then questioned the appellant about a robbery at the Quality Court Motel in Baltimore County. After a brief discussion, the appellant gave a written statement admitting his involvement in the Baltimore County robbery, again having been advised of his *Miranda* rights before signing the statement.

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## DISCUSSION

## I

## MOTION TO SUPPRESS

■ The Supreme Court's decision in *Miranda v. Arizona, supra,* held that a suspect's waiver of the Fifth Amendment privilege against self-incrimination is valid only if it is made voluntarily, knowingly, and intelligently. *Id.* at 444, 86 S.Ct. at 1612. This case presents the question of whether the suspect's awareness of all the crimes about which he may be questioned is relevant to determining the validity of his decision to waive his Fifth Amendment privilege.

In the instant case, the appellant signed a waiver form signifying the waiver of his Fifth Amendment rights. Appellant asserts that his waiver was not made voluntarily because the full scope of interrogation was not disclosed to him prior to questioning. The appellant argues that, because the detectives told him they wanted to discuss an Anne Arundel County robbery with him and subsequently discussed the Baltimore County robbery, the confession which he subsequently made as to the Baltimore County robbery was not voluntarily made and should therefore be suppressed.

In *Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), Spring was arrested in Kansas City, Missouri, by agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF) for illegal firearms transactions on March 30, 1979. Upon his arrest he was advised at the scene of his *Miranda* rights. Spring was then transported to the ATF office and was again advised of his rights, at which time Spring signed a written form stating that he understood and waived his rights. The ATF agents then questioned him about the firearms transactions which led to his arrest. During the course of the discussion, the agents asked Spring if he had a criminal record and asked him if he

had killed a man named Walker in Colorado. Spring replied, "No."

On May 26, 1979, Colorado law enforcement officials visited Spring in a Kansas City jail to question him about the Colorado homicide. The officers gave him his *Miranda* warnings, and he again signed a written form stating that he understood and waived his rights. Spring then stated that he wanted to "get it off his chest" and subsequently confessed to the Colorado murder. Spring then read, edited, and signed a written statement summarizing the interview. *Spring*, 479 U.S. at 568, 107 S.Ct. at 854.

At trial, Spring moved to suppress the signed statement he had given. He argued that his waiver of his *Miranda* rights was not voluntary because he was not informed that the agents would question him about the Colorado murder before the March 30 interview began. The trial court held that the agents' failure to inform Spring about the Colorado murder did not affect his waiver of his *Miranda* rights.

On appeal, the Colorado Court of Appeals reversed the trial court, finding that the ATF agents "had a duty to inform Spring that he was a suspect, or to readvise him of his *Miranda* rights, before questioning him about the murder." In reversing the Colorado Court of Appeals, the Supreme Court ruled that the suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to a determination of whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege. The Court explained that, since Spring was given his *Miranda* warnings prior to the confession, he was told, among other things, that he had the right to remain silent and that *anything* he said would be used as evidence against him. *Spring*, 479 U.S. at 577, 107 S.Ct. at 859 (emphasis added). Since there was no allegation that Spring did not understand his rights and given the fact that he signed a form stating that he understood his rights and voluntarily, knowingly, and intelligently waived his rights, the Court concluded that Spring's statement was voluntarily made and was therefore admissible. The Court stated

that "[a] confession cannot be [the] 'fruit of the poisonous tree' if the tree itself is not poisonous." 479 U.S. at 571–72, 107 S.Ct. at 856.[3]

In the case *sub judice* the facts are almost identical to those in *Spring*. At the time of the interrogation, the appellant was already incarcerated on unrelated charges. Before initiating the questioning on May 26, the officers read the appellant his *Miranda* rights and the appellant signed a form that he understood and waived' his rights. The officers then began questioning the appellant about robberies in Anne Arundel County. During the course of interrogation, the discussion turned to the Baltimore County robbery of the Quality Inn West. The appellant admitted his involvement in the robbery and signed a statement to that effect.

The law on this issue is clear. Officers need not give *Miranda* warnings each time they question the accused about a different subject within the same interrogation session. As the Court in *Spring* stated:

This Court's holding in *Miranda* specifically required that the police inform a criminal suspect that he has the right to remain silent and that anything he says may be used against him. *There is no qualification of this broad and explicit warning.* The warning, as formulated in *Miranda*, conveys to a suspect the nature of his constitutional privilege and the consequences of abandoning it.

*Spring*, 479 U.S. at 577, 107 S.Ct. at 859 (emphasis added).

In view of the Supreme Court's holding, the question whether the appellant knew of all of the subjects about which he was to be questioned is irrelevant to the question of whether his *Miranda* waiver was made knowingly, intelligently, and voluntarily. Since the appellant does not suggest that his *Miranda* waivers were involuntary for any

---

**3.** *See also Brown v. State*, 6 Md.App. 564, 569, 252 A.2d 272 (1968), where we held that *Miranda* warnings need not be given anew each time officers question the accused.

other reason, we find that the lower court properly denied his Motion to Suppress.

## II

## SENTENCING CONSIDERATIONS

■ The appellant next argues that the lower court erred in that the court's sentence was based on improper considerations. We do not agree. In the case of *Logan v. State,* 289 Md. 460, 425 A.2d 632 (1981), the Court of Appeals defined the scope of evidence which may be properly considered when sentencing criminal defendants. The Court states, "[I]n this State a sentencing judge is vested with virtually boundless discretion. He may impose any sentence, which is not cruel and unusual punishment proscribed by Article 16 of the Maryland Declaration of Rights...." *Logan v. State,* 289 Md. at 480, 425 A.2d 632. "[In] exercising ... [his] discretion, ... the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters that a judge ought to have before him in determining the sentence that should be imposed." *Bartholomey v. State,* 267 Md. 175, 193, 297 A.2d 696 (1972). "[A] judge is not limited to reviewing past conduct whose occurrence has been judicially established, but may view 'reliable evidence of conduct which may be opprobrious although not criminal, *as well as details and circumstances of criminal conduct for which the person has not been tried.'* " *Logan,* 289 Md. at 481, 425 A.2d 632, quoting *Henry v. State,* 273 Md. 131, 147–48, 328 A.2d 293 (1974) (emphasis added).

The appellant argues that the lower court erred in considering an unrelated robbery for which the appellant had been convicted but for which he had not yet been sentenced in its consideration of his sentence for the instant crimes. From the above opinion of the Court of Appeals, it stands to reason that if the sentencing judge may properly consider

details and circumstances of criminal conduct for which the person has not been tried, the sentencing judge may also consider crimes for which the person has been tried and convicted. We therefore hold that the lower court did not base the appellant's sentence on improper considerations.

## III

### IMPOSITION OF ILLEGAL SENTENCE

■ Finally, the appellant argues that the lower court imposed an illegal sentence for assault. In addition to the twenty year sentence which the appellant received for robbery, the appellant was also given a consecutive five year sentence for assault. The appellant contends that the lower court erred in failing to give the jury an adequate instruction that, in order to find the appellant guilty of a separate count of assault, it had to find the elements of assault were proven independently of those of the robbery.

The State concedes. It concurs with appellant's position that the lower court's instructions did not make it clear that the jury must base a conviction of assault on an act by the appellant distinct from the assault attendant to the armed robbery. As the appellant's only participation was holding the bag into which the money was placed, there is no independent evidence to support his conviction of assault. We agree and therefore reverse the conviction for assault.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED AS TO ROBBERY WITH A DEADLY WEAPON; JUDGMENT REVERSED AND SENTENCE FOR ASSAULT VACATED.

COSTS BE PAID ½ BY APPELLANT, ½ BY BALTIMORE COUNTY.