705 A.2d 10

Fred BELLAMY, Jr.

v.

STATE of Maryland.

No. 788, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Jan. 16, 1998.

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen, Baltimore and Jack B. Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before MOYLAN, HOLLANDER and EYLER, JJ.

HOLLANDER, Judge.

Fred Bellamy, Jr., appellant, was tried by a jury in the Circuit Court for Prince George's County (G.R. Hovey Johnson, J., presiding). Following his conviction for robbery with a deadly weapon, robbery, felony theft, and assault, appellant lodged an appeal to this Court and presents two questions for review:

I.  Did the trial court err by making inappropriate comments to the jury?

II. Did the trial court err by imposing separate sentences for offenses that should have merged?

We shall affirm the convictions. Nevertheless, we agree with appellant that his sentence for felony theft should have merged with his sentence for robbery with a deadly weapon. Therefore, we shall vacate the sentence for felony theft.

## Factual Background

Appellant was charged with the robbery of the Mobil Gas Station in Oxon Hill, Maryland, on May 5, 1996. At his jury trial in February 1997 in the Circuit Court for Prince George's County, the jury was presented with the following facts.

The cashier at the Mobil Gas Station testified that, at approximately 6:40 a.m. on May 5, 1996, he was robbed at gunpoint of between $450 and $500 in cash. The cashier said

he recognized the robber as a regular customer and as an employee of a nearby carwash. The victim notified the police as soon as the robber fled the scene, and the police responded within minutes. The victim later identified appellant as the robber after viewing a photographic array. At trial, the victim again identified appellant as the robber.

Approximately ten hours after the robbery, appellant and a friend pulled into the gas station and were arrested by police. Appellant's friend, who denied any involvement in the robbery, testified that appellant was carrying a large amount of cash that day, which appellant claimed he had won earlier in the day at a casino. A police detective testified that appellant had approximately $660 in cash when he was arrested.

In its instructions to the jury, both before opening statements and prior to deliberations, the court admonished the jury that its verdict must be unanimous. After the jury had begun its deliberations, the court was notified that the jury had reached a verdict. When the jury then returned to the courtroom, the following transpired:

THE CLERK: Ladies and gentlemen of the jury, have you agreed upon your verdict?

THE JURY: We have.

THE CLERK: Who shall say for you?

THE JURY: Our Foreman.

THE CLERK: Madam Foreman, what say you in CT 96–1066X, State of Maryland versus Fred Bellamy, Jr., as to question one, is the defendant guilty or not guilty of felony theft?

THE FOREMAN: We could not reach a unanimous decision.

THE COURT: Oh, for God's sake.

Ma'am, you said you had a verdict. Now, are you telling me you have no verdict in any of these counts?

THE FOREMAN: Then it is not guilty, because it is not—

THE COURT: Just a moment. Do you have a unanimous verdict?

THE FOREMAN: No.

THE COURT: Then you have no verdict. All right. We will break sequestration, send them home, bring them back in the morning and resume deliberations. Folks, at this point, all discussion ceases. I have been on this bench since 1982, and this is the first time anything like this has happened. No more discussions about this until I bring you in in the morning, put you in the jury box, make sure all 12 of you are there, and everybody else will be here, and then I will send you to the jury room to resume your deliberations. How this could have happened, I have no idea. Ma'am, you don't have a verdict until 12 people unanimously agree. Remember, all of the admonitions I gave you on yesterday. Leave all of your pads on the railing.

Where are the notes? Turn them over to the Clerk. Don't take anything out of here relating to this case. Mr. Bailiff, were you told that they had a verdict?

THE BAILIFF: Yes.

THE COURT: Madam Clerk, put all of those in an envelope so they can be returned to them tomorrow morning. If there is anything in the room take it out of the trash, Mr. Bailiff, and turn it over to the Clerk. All right folks. No discussions about this case whatsoever until all of us are together tomorrow morning, and then when I send you back into the jury room to resume your deliberations. Be in the jury lounge ready to be picked up by the Bailiff at 9:00 a.m. tomorrow morning. Is there anything that either side wishes the court to do?

[DEFENSE COUNSEL]: No, your honor.

[THE PROSECUTOR]: No, your honor.

THE COURT: 9:00 o'clock tomorrow morning, in the jury lounge, ready to be picked up by the Bailiff. Thank you. You are excused for the evening.

The jury was then excused from the courtroom. Outside of the jury's presence, the court addressed counsel:

THE COURT: Did I tell them something wrong?

[DEFENSE COUNSEL]: No. We were all standing here. They said we have a verdict.

THE COURT: You think I should change the Foreman in the morning? I will leave it up to you two. She is not in control, and she has got to be in control. Just think about it.

Thereafter, the court recessed the hearing until the following morning. At approximately 9:00 a.m. the next day, outside of the jury's presence, the following colloquy occurred:

[DEFENSE COUNSEL]: Your honor, in light of what happened yesterday, what I'm asking the Court to do, in order to protect my client's interest, is to take the verdict on the count and to inquire as to the other counts.

THE COURT: There was no verdict. That's what she said.

[DEFENSE COUNSEL]: Well, then she did say not guilty. That was the last thing she said.

THE COURT: She did not. What she said was we couldn't reach a verdict, and, therefore, I guess that's not guilty.

[DEFENSE COUNSEL]: As I said, just for the record, to protect my client's interest.

THE COURT: I'm not changing the record. The record was made yesterday on whatever that woman said, the clerk took down—I mean the reporter took down.

[DEFENSE COUNSEL]: Correct.

THE COURT: I'm not changing anything. I'm not doctoring anything. Whatever the transcript says for yesterday, that's what it is.

[DEFENSE COUNSEL]: Okay.

THE COURT: I didn't direct anything to the reporter.

[DEFENSE COUNSEL]: Right. I know.

THE COURT: So the reporter was taking down everything.

[DEFENSE COUNSEL]: Right.

THE COURT: So why would I change it?

[DEFENSE COUNSEL]: I'm not asking you to change it. I am asking you to make an inquiry into these jurors'—

THE COURT: Absolutely not. Absolutely not.

[DEFENSE COUNSEL]: Thank you.

THE COURT: She said they had not reached a verdict. Then she said, "So I guess," that's when I cut her off, and she finished it by saying, "I guess that means not guilty." She started out by saying, "We were unable to reach a verdict."

[DEFENSE COUNSEL]: Correct.

THE COURT: That's clear. Plain to the understanding and unambiguous.

[DEFENSE COUNSEL]: Thank you, Your Honor.

The court then brought in the jury and provided an approved Allen charge.[1] The jury resumed deliberations and, at approximately 2:00 p.m., the jury returned with a unanimous verdict; it convicted appellant of felony theft, assault, robbery, and robbery with a deadly weapon, and acquitted him of use of a handgun in the commission of a felony. The court then ordered a pre-sentence investigation.

On May 23, 1997, the court sentenced appellant to 20 years for robbery with a deadly weapon, suspending all but ten years. The court then merged the robbery and assault convictions into that offense. The court also sentenced appellant to ten years of incarceration for felony theft, concurrent with the sentence for robbery with a deadly weapon. This appeal followed.

## Discussion

### I.

Appellant complains about the trial court's comments to the jury after the foreperson erroneously advised the court that the jury had reached a verdict. Appellant argues that the court's remarks were "inappropriate and may have lead to a

---

1. *See Goodmuth v. State,* 302 Md. 613, 616–23, 490 A.2d 682 (1985); *cf. Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

guilty verdict," thus warranting reversal of appellant's conviction.

Appellant concedes that this issue is not preserved; he did not object to the court's statement, or to the way in which the court responded to the unexpected situation, nor did he move for a mistrial. Preservation of an issue for appellate review is governed by Maryland Rule 8–131(a), which states, in pertinent part: "Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court...." It is clear that appellant did not raise his complaint below, and thus "there is nothing preserved for appellate review." *Walker v. State*, 53 Md.App. 171, 180, 452 A.2d 1234 (1982) (holding appeal based on trial court's response to a jury question was unpreserved because appellant's counsel made no comment about the response and did not object to it).

Notwithstanding the lack of preservation, appellant urges us to exercise our discretionary power to consider the merits of his contention. *See Rubin v. State*, 325 Md. 552, 587, 602 A.2d 677 (1992) (" '[A]n appellate court may in its discretion in an exceptional case take cognizance of plain error even though the matter was not raised in the trial court.' " (quoting *Dempsey v. State*, 277 Md. 134, 142, 355 A.2d 455 (1976))). The *Rubin* Court observed that there is no "fixed formula" to determine when an appellate court should exercise its discretion to review unpreserved issues. *Id.* at 588, 602 A.2d 677 (quoting *State v. Hutchinson*, 287 Md. 198, 202, 411 A.2d 1035 (1980)). It said:

> [W]e have characterized instances when an appellate court should take cognizance of unobjected to error as compelling, extraordinary, exceptional or fundamental to assure the defendant of [a] fair trial. We further made clear that we would intervene in those circumstances only when the error complained of was so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial.

*Id.* at 588, 602 A.2d 677 (quoting *Trimble v. State,* 300 Md. 387, 397, 478 A.2d 1143 (1984)(internal quotations omitted), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985)).

In his brief to this Court, appellant urges that the trial court's comments "were tantamount to the judge telling the jurors that he was dissatisfied with the performance of their duties because they had not reached a unanimous decision to convict [a]ppellant." We agree that the trial judge was obviously dissatisfied with the conduct of the jury in advising that it had reached a verdict when, in fact, it had not. Although the court was completely surprised by the information conveyed by the foreperson, we do not see even the slightest suggestion by the court that it was frustrated because the jury had not decided to *convict.*

Appellant cites *Scott v. State,* 289 Md. 647, 426 A.2d 923 (1981), for the proposition that "[t]he law requires the trial of a defendant not only to be fair but to give every appearance of being fair." *Id.* at 655, 426 A.2d 923. *Scott* is wholly inapposite to the case *sub judice.*

In *Scott,* the trial court ordered a pre-sentence investigation. As part of that investigation, the Supreme Bench Medical Office recommended incarceration, but did not make a recommendation as to the specific duration of the sentence. Later, a representative from the medical office met with the judge and recommended the maximum sentence, but this subsequent recommendation was never communicated to appellant's counsel. The trial court then imposed the maximum sentence. The Court of Appeals concluded that this violated the rule requiring delivery to counsel of pre-sentence reports, and any recommendation based thereon, in sufficient time prior to sentencing to allow for an opportunity to investigate and challenge the information. *Id.* at 653–54, 426 A.2d 923.

In this case, there is no indication that the trial court violated any rules of court. Moreover, we note that a trial judge has great discretion in controlling the conduct of a trial. *State v. Hawkins,* 326 Md. 270, 277, 604 A.2d 489 (1992);

*Icgoren v. State,* 103 Md.App. 407, 443, 653 A.2d 972, *cert. denied,* 339 Md. 167, 661 A.2d 700 (1995). To be sure, a trial judge holds an authoritative position, and therefore should refrain from directly or indirectly expressing an opinion regarding the evidence. *Dresbach v. State,* 228 Md. 451, 453, 180 A.2d 299 (1962); *Nance v. State,* 93 Md.App. 475, 486, 613 A.2d 428 (1992) *aff'd,* 331 Md. 549, 629 A.2d 633 (1993). That is not what happened in this case, however. The trial court's comments reflect surprise and frustration resulting from the jury's apparent failure to understand or follow the unanimity requirement that the court had carefully explained in its instructions. Once the court realized what had happened, it merely endeavored to freeze the situation, so that the jury could resume its deliberations.

In our view, there was no error here, much less anything that was so compelling, extraordinary, exceptional, or fundamental, as to warrant a reversal in order to protect appellant's right to a fair trial. Therefore, we shall affirm appellant's convictions.

## II.

Appellant also argues that the court should have merged the sentences for robbery with a deadly weapon and felony theft. The State agrees.

Under Maryland common law, the question of whether one criminal offense merges into another is usually resolved by the "required evidence test." [2] *Williams v. State,* 323 Md. 312, 316–17, 593 A.2d 671 (1991) (and cases cited therein); *see also Claggett v. State,* 108 Md.App. 32, 45, 670 A.2d 1002, *cert. denied,* 342 Md. 330, 675 A.2d 992 (1996). The

---

2. The "required evidence test" is also called the *"Blockburger* test," referring to *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), or the "same evidence test." Under this test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

required evidence test applies to both common law and statutory offenses. *Williams,* 323 Md. at 317, 593 A.2d 671; *Snowden v. State,* 321 Md. 612, 617, 583 A.2d 1056 (1991); *Claggett,* 108 Md.App. at 45–46, 670 A.2d 1002. Even if two offenses fit within the required evidence test, "[i]t is quite clear that the legislature may provide for cumulative sentences or multiple punishments for separate crimes." *Spitzinger v. State,* 340 Md. 114, 119, 665 A.2d 685 (1995).

There is no question that the required evidence test is inapplicable here because the offenses at issue each have elements separate and distinct from the other. Felony theft requires a taking of property that has a value of $300 or greater. Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 342(f)(1); *see also Spitzinger,* 340 Md. at 121, 665 A.2d 685. Robbery with a deadly weapon requires the taking of property of any value, by force, with a dangerous or deadly weapon. Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 488; *see also Spitzinger,* 340 Md. at 121, 665 A.2d 685 (describing difference between felony theft and robbery). Thus, the offenses at issue here do not merge.

Nevertheless, even if the offenses do not merge, there may be a merger of penalties based on the "rule of lenity." *Spitzinger,* 340 Md. at 124, 665 A.2d 685; *Williams,* 323 Md. at 322, 593 A.2d 671; *Claggett,* 108 Md.App. at 51, 670 A.2d 1002. The rule of lenity is a principle of statutory construction that requires a court to determine if the Legislature intended for multiple punishments arising from the same act or transaction. *Claggett,* 108 Md.App. at 51, 670 A.2d 1002. If there is any doubt as to whether the Legislature intended to authorize successive or cumulative punishments for the same act or transaction, those doubts must be resolved in favor of the defendant; under the rule of lenity, the sentences must merge. *Spitzinger,* 340 Md. at 124, 665 A.2d 685; *Gargliano v. State,* 334 Md. 428, 437, 639 A.2d 675 (1994); *White v. State,* 318 Md. 740, 744, 569 A.2d 1271 (1990); *Claggett,* 108 Md.App. at 51–52, 670 A.2d 1002.

■   In light of these principles, we must determine whether the Legislature intended the imposition of multiple punishments for convictions of felony theft and robbery with a deadly weapon arising out of a single event or incident. Based on *Spitzinger*, we conclude that appellant's sentences should merge. In *Spitzinger*, the Court considered whether, under the rule of lenity, sentences for robbery and felony theft should merge. It concluded:

> We ... have some doubts, in light of our prior cases and the history of common law robbery and common law larceny, as to whether the legislature intended to authorize successive or cumulative punishment for felony theft and robbery. Those doubts must be resolved in favor of the defendant, so that under the rule of lenity the sentences for robbery and felony theft should merge.

*Spitzinger*, 340 Md. at 124, 665 A.2d 685.

In its discussion, the *Spitzinger* Court specifically referred to *Alston v. State*, 89 Md.App. 178, 180 & n. 1, 597 A.2d 1023 (1991). There, the trial court merged, for sentencing purposes, robbery and theft counts with a count for robbery with a deadly weapon. *See Spitzinger*, 340 Md. at 124, 665 A.2d 685; *see also Wiggins v. State*, 76 Md.App. 188, 190 & n. 1, 544 A.2d 8 (1988) (noting that trial court merged felony theft and robbery with a deadly weapon charge), *rev'd on other grounds*, 315 Md. 232, 554 A.2d 356 (1989).

Therefore, we agree with appellant and the State that appellant's sentence for felony theft should merge into the sentence for robbery with a deadly weapon.

**APPELLANT'S SENTENCE FOR FELONY THEFT VACATED. ALL OTHER JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID 75% BY APPELLANT, 25% BY PRINCE GEORGE'S COUNTY.**